UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| H.I.D.R., et al.,<br><br>    Petitioners-Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>    Respondents-Defendants. | No. 1:25-CV-060-H |

**ORDER**

Before the Court is the petitioners' emergency motion for a temporary restraining order (Dkt. No. 2). The petitioners H.I.D.R. and O.A.S. assert that they "are at imminent risk of summary removal" from the United States. Dkt. No. 2 at 2 (emphasis omitted). To avoid alleged irreparable harm, the petitioners ask the Court, among other things, to enjoin the government from removing them from the country. *Id.* The Court asked the government whether it would remove H.I.D.R. and O.A.S. pending resolution of their habeas petition. Dkt. No. 5. The United States answered unequivocally, stating that "H.I.D.R. and O.A.S. will not be removed before their habeas petitions are adjudicated." Dkt. No. 16 at 4. As a result, the petitioners are not at "imminent risk of summary removal," and they cannot show a substantial threat of irreparable harm. The motion (Dkt. No. 2) is therefore denied.

1.    **Factual and Procedural History**

On March 14, 2025, President Donald J. Trump signed a proclamation under the Alien Enemies Act of 1798 providing that "all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not

actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." Dkt. No. 1 at 12 (brackets in original).

H.I.D.R., a Venezuelan national, entered the United States in 2023. Dkt. No. 1 at 5. ICE detained H.I.D.R. on March 28, 2025, and transferred him from New York to the Winn Correctional Center in Louisiana. *Id.* at 5–6. On April 14, 2025, authorities transferred H.I.D.R. from Louisiana to the Bluebonnet Detention Center in Texas. *Id.* at 6. According to the petition, ICE contends that H.I.D.R. is a member of TdA. *Id.*

O.A.S. is also a Venezuelan national. *Id.* O.A.S. has a pending asylum application in the Miami Immigration Court. *Id.* ICE detained O.A.S. at the Tampa International Airport. At some point, ICE transferred O.A.S. to the Bluebonnet Detention Center. *Id.* O.A.S. alleges that "[o]n April 17, 2025, O.A.S. heard ICE tell Venezuelan detainees at Bluebonnet Detention Center that they were going to be deported that night regardless of their status." *Id.* According to the petition, ICE contends that O.A.S. is a member of TdA. *Id.*

H.I.D.R. and O.A.S. assert that they may be imminently deported to El Salvador or Venezuela. Dkt. No. 3 at 19. They filed their joint petition for a writ of habeas corpus on April 18, 2025. *See generally* Dkt. No. 1. Neither H.I.D.R. nor O.A.S. has been issued a notice of intent to remove them under the Act. *See id.* at 4.

Contemporaneously with their petition, the petitioners moved for an emergency, ex-parte restraining order against the respondents. Dkt. No. 2. The petitioners claim in their motion that the government may remove Venezuelan nationals, such as the petitioners, to El Salvador or Venezuela with less than 24 hours' notice in a summary

proceeding without due process or the opportunity for judicial review, potentially depriving the Court of jurisdiction to hear the petitioners' habeas claims. Dkt. No. 3 at 3–5, 21. Once the Court is deprived of jurisdiction, the petitioners assert, they will risk torture, abuse, persecution, and the inability to obtain relief. *Id.* at 19–20.

The Court ordered the petitioners to provide notice to Chad Meacham, the Acting United States Attorney for the Northern District of Texas or to file a brief explaining why they did not need to provide notice to the respondents of the request for a restraining order. Dkt. No. 5. The petitioners then filed a notice of service as to Acting United States Attorney Meacham. Dkt. No. 11.

The Court further instructed the government to respond to the motion for a temporary restraining order by 4:00 p.m. CT on April 18, 2025. Dkt. No. 5 at 3. The government responded. Dkt. No. 16. The government's response states that the government "does not intend to the remove H.I.D.R. or O.A.S. pending a decision on their requests for a temporary restraining order" and that "H.I.D.R. and O.A.S. will not be removed before their habeas petitions are adjudicated." *See* Dkt. No. 16 at 4.

**2.    Analysis**

The Court denies the motion because three points undermine the petitioners' assertion of imminent, irreparable harm. First, the Supreme Court's recent opinion in *Trump v. J.G.G.*, 2025 WL 1024097 (U.S. Apr. 7, 2025), leaves no doubt that detainees, like the petitioners, are entitled to some level of due process and judicial review. Second, the government's representations to this Court make manifest that the petitioners will not be removed pending this litigation and that the government will alert the Court if that

expectation changes. And third, the petitioners' desire for more concessions or specific timetables from the government does not sufficiently show imminent, irreparable injury.

Movants seeking preliminary injunctive relief must establish (1) "a substantial likelihood that they will prevail on the merits," (2) a "substantial threat that they will suffer irreparable injury if the injunction is not granted," (3) that "their substantial injury outweighs the threatened harm to the party whom they seek to enjoin" and (4) that "granting the preliminary injunction will not disserve the public interest." *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)). A temporary restraining order is "simply a highly accelerated and temporary form of preliminary injunctive relief," which requires the party seeking such relief to establish the same four elements for obtaining a preliminary injunction. *Hassani v. Napolitano*, No. 3:09-CV-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). Therefore, the same criteria are applicable to temporary restraining orders. *See May v. Wells Fargo Home Mortg.*, No. 3:12-CV-4597-D, 2013 WL 2367769, at *1 (N.D. Tex. May 30, 2013).

Preliminary injunctive relief is "an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). "The decision to grant [such relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)) (stating that a movant must "clearly carr[y] the burden of persuasion").

The petitioners ask the Court to decide, "as soon as possible," *see* Dkt. No. 2 at 3, whether to restrain the federal government from exercising its immigration powers—a realm

in which the political branches, not the judiciary, enjoy substantial power and responsibility. *See, e.g.*, *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) (noting that "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government" and that "[s]uch matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference"). And in this context especially, the Supreme Court has recently noted that the Alien Enemies Act largely precludes judicial review. *J.G.G.*, 2025 WL 1024097, at *1. The Court must tread carefully when making such a hasty decision, especially one of significant magnitude. These considerations are why preliminary relief is an exception rather than the rule. And although temporary restraining orders against the government are sometimes justified, the movant must show that there is a substantial threat of irreparable harm without such relief. *See City of El Cenizo*, 890 F.3d at 176.

    The petitioners have not met this burden. First, Supreme Court precedent undermines the petitioners' assertion of imminent and summary removal without process. Just last week, the Supreme Court outlined the requirements and procedures for these cases. *See J.G.G.*, 2025 WL 1024097, at *2. The Supreme Court noted that, even under the Alien Enemies Act, "an individual subject to detention and removal . . . is entitled to judicial review as to questions of interpretation and constitutionality of the Act as well as whether he or she is in fact an alien enemy fourteen years of age or older." *Id.* at *2 (internal quotation marks omitted) (quoting *Ludecke v. Watkins*, 335 U.S. 160, 163–64 (1948)).

    Moreover, the Supreme Court noted that "[t]he detainees' rights against summary removal . . . [were] not currently in dispute," as the government "expressly agree[d] that

TdA members subject to removal under the Alien Enemies Act get judicial review." *Id.* (internal quotation marks omitted). And the Supreme Court further reiterated that "the detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). "More specifically, in this context, AEA detainees must receive notice after [April 7, 2025] that they are subject to removal under the Act." *Id.* The notice must "be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Id.* Lest it not already be completely clear, the Supreme Court stated that "[f]or all the rhetoric of the dissents, . . . the detainees subject to removal orders under the AEA are entitled to notice and an opportunity to challenge their removal." *Id.*

Thus, the Supreme Court has already made clear that the alleged immediate removals prior to notice and the opportunity for judicial review, which form the basis of the petitioners' motion, are illegal. *See id.* And the government recognized this reality in the Supreme Court. *Id.*

Second, the government's own representations in this case preclude a finding of imminent, irreparable harm. In an attempt to establish that *J.G.G.* is insufficient to safeguard the rights of the petitioners, they assert that the "[r]espondents have yet to concede that they will provide meaningful notice, much less any sense of when that notice will be provided to individuals or what form it will take." Dkt. No. 3 at 20. As such, the petitioners contend that "there remains an unacceptably high risk that the government will deport individuals who are not in fact members of TdA." *Id.*

But the government's response confirms that it will not remove either petitioner until the habeas petition is resolved. Dkt. No. 16 at 4. The government further provided a declaration from Yousuf Khan, Assistant Field Office Director for the United States Department of Homeland Security, Immigration and Customs Enforcement, who stated that "ICE does not intend to remove H.I.D.R. and O.A.S. under the AEA while their habeas petitions are pending." Dkt. No. 16-2 at 2.

Given this record, the Court has no basis upon which to believe that the government is going to defy the Supreme Court's clear directives in *J.G.G.* or the government's own representations to the Supreme Court and to this Court. Thus, in light of *J.G.G.* and the government's representations in its response (Dkt. No. 16) and supporting materials (Dkt. No. 16-2), the petitioners' conjecture is too speculative to support the exceptional remedy requested.

Third, the fact that the government has "yet to concede" its obligation to provide meaningful notice is insufficient to affirmatively show that the government is going to commit the acts feared here. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2025) (noting that there must be a "likelihood that irreparable harm will occur" and that "[s]peculative injury is not sufficient"); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "[i]ssuing a preliminary injunction based on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy"); *Morrell v. City of Shreveport*, 536 F. App'x 433, 435 (5th Cir. 2013) (noting that "speculative injury is not sufficient"); *see also* Dkt. No. 21 at

25–26.  Specifically, the government has affirmed in a sworn statement, and in its briefing, that it "does not intend to remove H.I.D.R. and O.A.S. under the AEA while their habeas petitions are pending."  Dkt. No. 16-2 at 2; *see also* Dkt. No. 16 at 4.

Under these circumstances, the Court finds that the petitioners have failed to meet their "heavy burden" to show a substantial threat of irreparable harm.  *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).  Irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of" injunctive relief of this sort.  Wright & Miller, *supra* § 2948.1.  Lacking a showing of "certainly impending" future injury, the Court cannot grant the temporary restraining order.  *See Aransas Project v. Shaw*, 775 F.3d 641, 664 (5th Cir. 2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

### 3. Conclusion

The Supreme Court has already affirmed that petitioners are entitled to judicial review, including notice and a hearing, before removal.  *See J.G.G.*, 2025 WL 1024097, at *2.  The government agreed with this statement of law before the Supreme Court.  *See id.*  The petitioners have not made a sufficient showing at this stage to convince the Court that the government will violate its representations to that effect or the instructions of the Supreme Court.  The petitioners have therefore failed to meet their burden to show a substantial threat of imminent, irreparable injury.  The Court denies the motion for a temporary restraining order (Dkt. No. 2).

So ordered on April 18, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE